*Orphans' Court, Dauphin County, December 16th, 1861.*

### IN THE MATTER OF MAIER'S ESTATE.

The Orphans' Court has no power over $300 secured by law to the widow and family of a decedent after the appraisement is made and approved.

When a widow has failed to demand an appraisement of personal property belonging to her late husband, under the three hundred dollar exemption law, until after an appraisement of all the effects was completed and returned to the register's office, it was held that she was too late, and precluded.

The value of the personal effects being under three hundred dollars, and one-half thereof having been bequeathed to the widow, and the other half to the child of the deceased; the widow having elected to take under the will, cannot demand any portion under the exemption law, as it would render that provision of the will inoperative.

BY THE COURT.—A rule was obtained by John C. Maier, a legatee, and one of the executors of Christian Maier, deceased, upon his widow, Rebecca Maier, to appear and show cause why she should not elect to take, or refuse to take, under the will, and also why $300 worth of the personal effects, claimed by her under the fifth section of the act of the 14th of April, 1851, should not be distributed to the devisees, according to the will of said Christian Maier. On the return of the rule the widow came into court by her attorney, and agreed to accept under the will, but also claimed to have $300 out of her late husband's estate, under the act of Assembly. The following facts were established on the hearing: Christian Maier, on the 25th day of July, 1861, made his last will, which was admitted to probate on the 31st of the same month, whereby he bequeathed, *inter alia,* to his wife Catharine, one-half of his personal property, and to his son, John C., the other half, making the latter one of his executors. On the 22d day of August, 1861, appraisers were selected, who on the same day appraised all of the personal effects of the deceased at $207.46, which was duly returned into the register's office and filed on that day. On the 14th of September, the widow had a notice served on the executors that she claimed $300 under the exemption law, requiring them to appraise personal property for her to that amount, and if there was not sufficient, demanding the residue out of the real estate. The first question for our consideration is, was the notice in time? By the act of the 14th of April, 1851, the property about to be taken by a widow for the use of herself and family must be appraised in the manner directed by the act of the 9th of April, 1849, to wit, by three sworn appraisers. But by a later statute, passed April 8th, 1859, Pamphlet Laws, p. 425, it is provided, "that hereafter, in all cases where property shall be set apart for the widow and children of any decedent, the same shall be appraised and set apart to said widow and children by the appraisers of the other personal estate of said decedent." This was by the intestate law required to be

[In the Matter of Maier's Estate.]

done by two sworn appraisers, within thirty days after administration granted, or letters testamentary issued. The widow should, therefore, in the present case, have given notice to the executors that she desired to have the $300 worth of property appraised and set apart before the appraisement of the decedent's personal effects took place and was completed.

It is well established that the debtor who claims the exemption, must give notice before an inquisition is held on real estate (4 Harris, 300, 6 Harris, 307). Or where none is required, as in sales on mechanics' liens before advertisement (9 Harris, 210). This principle is applied to the sale of personal property in Gilleland v. Rhoads (10 Casey, 187). At page 190, Judge Woodward says: "The time for demanding the exemption is at the levy, *or at the latest before the advertisement of the sale,* unless absence or other good cause be shown to excuse the delay." And in Davis's Appeal, same book, p. 256, it is said : " The right of a widow to claim the exemption is a personal privilege which she may waive, and is waived entirely by neglecting to . demand an appraisement at the proper time." Now, as we conceive, the proper time for this widow to claim the exemption, was when her husband's personal effects were about to be appraised as required by law, and before the appraisement was completed and returned to the proper office. If not done before, she is too late, as the same reason which applies to cases of sales by a sheriff or constable will to this,—increased trouble and expense. There is no reason why the executors should be required to again convene the appraisers, and incur the expense of a second appraisement of the same identical property already valued and returned. The cost, trouble, and delay, are quite equal to that of a second advertisement by an officer, and the cases are strongly analogous. If the rule adopted by the Supreme Court is to be adhered to, there is no reason why it should not be applied to cases like the present. It is contended, however, that the widow was ignorant of her legal rights, and should not be debarred on account of the small expense of a reappraisement; that she has a strong equitable claim for relief. We are unable to perceive one particle of equity in her case, and independent of her neglect to demand an appraisement at the proper time, she is, as we conceive, precluded by another legal principle. Her husband had personal property at the time of his death worth but $207.46, one-half of which he bequeathed to his wife, the other half to his only son. The widow, with a full knowledge of the value of the property, has elected to take under the will, no doubt, on account of the legacy of fifty dollars a year required to be paid her by the son during life. She now attempts to defeat the bequest of personal property by taking the whole of it as an exemption. She cannot thus be permitted to take advantage of the other legatee. It is allowing her to enjoy the

[In the Matter of Maier's Estate.]

benefits of the will and get clear of any burden imposed, at the same time defeating the just expectations of the other legatee. There is no other property for this bequest to operate upon, yet with a knowledge of that fact she accepts under the will.

On the argument still more is claimed for her, that she shall not be required to take the whole of the personal property towards paying her the $300, as one-half is her own already by the will, but that she can take that part merely bequeathed to the son, and obtain the residue out of the real estate of the decedent. This we conceive would be still more inequitable. She cannot make good her own legacy, and defeat that of the other legatee. As this estate is situated, we are of the opinion that by claiming under the will, the widow is precluded from demanding the $300 under the exemption laws. There is another reason why she has no equity: the son was living with his father, constituting a portion of the family, at the time of his death; thus presenting an equal claim with the widow to the exempt property. The widow, by the act of Assembly, takes "*for the use of herself and family,*" yet it is well known that the effect of the law has been to give her entire control over the personal effects to the value of $300, appraised and set apart; and where money has been paid, she is enabled to appropriate it to her own use, to the entire exclusion of the other members of the family. This has often effected great injustice, and probably calls for some legislative remedy to secure the future rights of the children, especially as it frequently occurs that the widow is a stepmother. The law contemplates that each shall have an equal benefit in the property, as the widow is only authorized to take "for the use of herself and family." In the present case, John C. Maier, by his petition, asks that his stepmother shall be required to hold the property, if granted to her, for their mutual benefit. This is no more than equitable, yet we can make no such order. When the appraisement is made and approved, the court has no further control over the property; they must *scramble* for it as best they can; but it is an additional reason why equity would not relieve the widow against her neglect to make the demand for an appraisement in time.

The widow's claim for an appraisement of $300 worth of the property of the deceased, under the exemption laws, is refused, and it is ordered that the effects appraised be brought into the usual course of administration and distribution, under the will of the decedent.